IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3V, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-593-JJF |
| | : | |
| CIBA SPECIALTY CHEMICALS CORP., | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| | : | |
| CIBA SPECIALTY CHEMICALS CORP., | : | |
| | : | |
| Cross-Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-629-JJF |
| | : | |
| 3V, INC., | : | |
| | : | |
| Cross-Defendant. | : | |

| | | |
|---|---|---|
| | : | |
| CIBA SPECIALTY CHEMICALS CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-672-JJF |
| | : | |
| 3V, INC., | : | |
| | : | |
| Defendant. | : | |

Alan E.J. Branigan, Esquire; Brion Heaney, Esquire and Richard J.
Traverso, Esquire of MILLEN WHITE ZELANO & BRANIGAN, P.C.,
Arlington, Virginia.
Frederick L. Cottrell III, Esquire and Chad M. Shandler, Esquire
of RICHARDS LAYTON & FINGER, Wilmington, Delaware.

Attorney for Defendant, Cross-Plaintiff, and Plaintiff CIBA
Specialty Chemicals, Corp.

Angelica M. Colwell, Esquire of NEXSEN PRUET, LLC, Charleston,
South Carolina.
Joseph Grey, Esquire of STEVENS & LEE, P.C., Wilmington,
Delaware.

Attorneys for Plaintiff, Cross-Defendant and Defendant 3V, Inc.

O P I N I O N

November $\underline{\smash{)}\,9}$ , 2008
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is 3V's Motion to Dismiss Civil Action Nos. 06-00593-JJF, 06-00629-JJF, and 06-00672-JJF for lack of subject matter jurisdiction. (D.I. 34 in 06-00593-JJF.)[1] Also before the Court is CIBA's Motion For Leave Of Court To Serve Limited Discovery Relating To 3V's Disclaimer Of Its Patent Claims. (D.I. 37.) For the reasons discussed, the Court will grant 3V's Motion to Dismiss and deny CIBA's Motion For Leave of Court To Serve Limited Discovery.

## I. Factual Background

This dispute stems from Interference No. 105,262, initiated by the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office ("the Board") on May 24, 2005. In this interference proceeding, the Board considered the question of whether 3V, Inc. ("3V") or CIBA Specialty Chemicals Corporation ("CIBA") was the first to invent the invention claimed in both 3V's U.S. Patent No. 5,658,973 ("the '973 patent," filed on July 26, 1995) and CIBA's U.S. Patent Application Serial No. 10/081,291 ("the '291 application," filed on February 22, 2002). On July 27, 2006, the Board issued a final decision on the interference, and the decision was partially adverse to both parties. Although the Board found that

---

[1] Unless otherwise noted, docket item numbers in this Opinion refer to Civil Action No. 06-00593-JJF.

CIBA had priority of invention, it also found that claims 16-27 of CIBA's '291 application were not entitled to the benefit of CIBA's European application EP 95810042.2 (filed on January 23, 1995). (D.I. 1, at ¶ 13; D.I. 1 in 06-00629-JJF, at ¶ 12.) As a result, the Board found that claims 16-27 in CIBA's application were unpatentable under 35 U.S.C. § 102(e) as anticipated by 3V's '973 patent. (D.I. 1 in 06-00629-JJF, at ¶ 12.)

In response to the Board's decision, 3V initiated Civil Action No. 06—00593-JFF pursuant to 35 U.S.C. § 146, challenging the Board's determination that CIBA held priority of invention.[2] (D.I. 1.) CIBA counterclaimed, alleging that claims 16-27 of its '291 application were entitled to the benefit of its European application EP 95810042.2 such that 3V's '973 patent would not anticipate them. (D.I. 5.) In addition, CIBA initiated two separate actions of its own. First, pursuant to 35 U.S.C. § 146, CIBA filed a Cross-Complaint, again asking the Court to overturn the Board's decision that claims 16-27 of its '291 application were not entitled to the benefit of European Application EP 95810042.2. (D.I. 1 in 06-00629-JJF.) Second, pursuant to 35

---

[2] 35 U.S.C. § 146 provides that "[a]ny party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences may have remedy by civil action ...." 35 U.S.C. § 146. The statute further provides that "suit may be instituted against the party in interest as shown by the records of the Patent and Trademark Office at the time of the decision complained of, but any party in interest may become a party to the action." Id.

2

U.S.C. § 291, CIBA asked the Court to determine whether CIBA's U.S. Patent No. 6,380,286 was entitled to priority of invention over 3V's '973 patent.[3]  (D.I. 1 in 06-00672-JJF.)

Following the initiation of these actions, the parties engaged in settlement negotiations. Believing these negotiations to be at a standstill, on March 20, 2008, 3V filed a statutory disclaimer pursuant to 35 U.S.C. § 253, disclaiming all claims of the '973 patent and dedicating to the public its entire right, title, and interest in the patent. (D.I. 34 ¶ 3.)  3V then filed the present motion to dismiss, contending that there was no longer a cognizable controversy before the Court because it no longer held any interest in the '973 patent. (D.I. 34.)  CIBA opposed the motion, contending that the Court must still consider whether claims 16-27 of CIBA's '291 application are entitled to the benefit of EP 95810042.2 such that the '973 patent would not then constitute prior art.  (D.I. 36 ¶¶ 4-5.)  In addition, CIBA filed a motion seeking leave of Court to take additional discovery pertaining to 3V's disclaimer of its patent claims. (D.I. 37.)

---

[3] 35 U.S.C. § 291 provides that "[t]he owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of validity of any of the interfering patents, in whole or in part." 35 U.S.C. § 291.

## II.  PARTIES' CONTENTIONS

### A.  3V's Motion to Dismiss for Lack of Personal Jurisdiction

3V contends that all three cases before the Court should be dismissed because there is no longer a justiciable case or controversy.  (D.I. 34 ¶ 10.)  3V contends that because it has disclaimed all claims of the '973 patent, "the effect is the same as dedication of the patent to the public or abandonment." (Id. ¶ 5.)  Lacking any interest in a patent that may interfere with CIBA's '291 application, 3V urges that it would no longer have anything to protect in a § 146 or § 291 action against CIBA.  (D.I. 40 ¶ 9.)  Thus, according to 3V, the current case is moot.

CIBA responds that 3V's disclaimer "does nothing to prevent its 5,658,973 [patent] from being used [as prior art] (albeit incorrectly) against CIBA's claims 16-27."  (D.I. 36 ¶ 4.) CIBA urges that although 3V disclaimed the subject matter for which it had the burden of proof during the interference, the corresponding subject matter for which CIBA had the burden of proof (i.e., whether CIBA's '291 application can claim priority to their earlier European application) remains.  (Id. ¶ 2.) According to CIBA, 3V cannot unilaterally cut off CIBA's access to "its only remaining avenue of appeal" on these issues simply by disclaiming its interest in the '973 patent.  (Id. ¶ 6.)

B.   CIBA's Motion for Leave to Serve Limited Discovery
     Relating to 3V's Disclaimer of its Patent Claims

CIBA contends that 3V "has planned for a long time, if not
from the outset, to file its recent disclaimer and motion to
dismiss," yet, "in an effort to run up CIBA's litigation costs
and for other strategic reasons, . . . failed to inform CIBA of
its disclaimer until after CIBA spent, unnecessarily, hundreds
of thousands of dollars in attorneys' fees and costs . . . ."
(D.I. 38 at 2.)   As a specific example, CIBA complains that
although 3V filed its disclaimer on March 20, 2008, it never
informed CIBA of the disclaimer until seven days later, and then
only through its motion to dismiss.   CIBA contends that during
the seven day interval, it spent roughly $44,000 reviewing
documents for production to 3V.   (D.I. 38 at 2-3; D.I. 45 at 3
n.2.)

CIBA would like to serve additional discovery to
conclusively prove that 3V intentionally failed to advise 3V of
its disclaimer so that the case may then be declared
exceptional.   Briefly, CIBA asks that it be entitled to conduct
discovery pertaining to, at least, "when 3V decided to disclaim
the heart of its action in this Court; why, except to run up its
competitor's expenses, it failed to notify CIBA of that intent;
and, why 3V apparently did no electronic discovery . . . ."
(D.I. 38 at 4.)

5

The gist of CIBA's position appears to be that had 3V genuinely intended to litigate in good faith, rather than simply string CIBA along as it burned through resources, 3V would have been more engaged in discovery, especially in light of agreed-upon discovery obligations. CIBA points to the following examples of 3V's failure to participate in discovery:

- In May of 2007, CIBA requested the depositions of three individuals regarding 3V's electronically stored information ("ESI"). 3V has allegedly done "nothing" in response to this request. (Id. at 4.)

- 3V allegedly failed to advise CIBA of the dates when 3V began to preserve ESI and/or when it suspended automated deletion of ESI. (Id. at 5.)

- On August 9, 2007, 3V agreed to provide a key word list for CIBA to use in filtering its ESI. 3V did not provide such a list until after roughly six months had passed. (Id.)

- 3V has allegedly produced no electronic discovery, including requested documents pertaining to 3V's application for a Chemical Abstract Service registry number for the chemical "Uvasorb HA88" (Id. at 5-6.)

- 3V allegedly failed to conduct a review of the ESI produced by CIBA on March 3, 2008. (D.I. 45 at 1.)

3V responds first that the information CIBA would seek is either protected by the attorney-client privilege or is work product. (D.I. 44 at 1, 5-6.) With regard to CIBA's allegations that 3V failed to advise CIBA of its intention to disclaim its patent claims, 3V states that it delayed filing the disclaimer until it was clear that settlement was unlikely to be reached, and that negotiations were ongoing two weeks prior to the filing of the disclaimer. (Id. at 1.) 3V further states

6

that it had notified CIBA in a March 6, 2008 telephone call that it was considering a disclaimer as a means of ending the litigation, but that it would exercise this option only if settlement efforts failed. (Id. at 4-5.) Furthermore, to the extent CIBA complains of having unnecessarily spent money on discovery, 3V contends that (1) CIBA needed to collect documents to support its own affirmative claims and counterclaims in any event, and (2) 3V had no control over the allegedly unduly expensive discovery methods employed by CIBA. (Id. at 3, 9-10.)

As to CIBA's allegations that 3V failed to engage in discovery, 3V states that it had produced 2,759 pages of documents in early June 2007, but that CIBA failed to produce any documents whatsoever until March 2008, despite assurances from CIBA in August 2007 that documents would be forthcoming. (Id. at 3-4.) 3V further states that, prior to filing its disclaimer, it had begun looking into whether it needed to provide the requested depositions regarding ESI, that it has located documents regarding 3V's application for a Chemical Abstract Service number, and that it has repeatedly confirmed to CIBA that its ESI was being preserved. (Id. at 10-13.)

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter. Once the court's subject matter jurisdiction over a complaint is challenged, the party seeking jurisdiction bears the burden of proving that jurisdiction exists. Mortensen, 549 F.2d at 891. "The jurisdiction of federal courts is defined and limited by Article III of the Constitution. In terms relevant to the question for decision in this case, the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" Flast v. Cohen, 392 U.S. 83, 94 (U.S. 1968) "When the issues presented in a case are no longer 'live' or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction." Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004). "Article III requires that a plaintiff's claim be live not just when he first brings the suit but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction." Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992).

B.    Decision

    1.    Whether A "Case or Controversy" Continues To
          Exist Such That The Court Has Subject Matter
          Jurisdiction

The Court concludes that a genuine case or controversy no

longer continues to exist for any of the three actions.  This

Court has explained the effects of 3V's disclaimer of all claims

of its '973 patent as follows:

> Disclaimed claims cannot be revived, through reissue
> or otherwise. The patentee has no further right either
> to enforce the claims which have been disclaimed, or
> to obtain a reissue of any of those claims. Since all
> the claims have been disclaimed, the effect of
> plaintiff's action is the same as dedication of the
> patent to the public or abandonment.

W. L. Gore & Associates, Inc. v. Oak Materials Group, Inc., 424

F. Supp. 700, 702 (D. Del. 1976) (internal citations omitted);

see also Guinn v. Kopf, 96 F.3d 1419, 1422 (Fed. Cir. 1996) ("A

statutory disclaimer under 35 U.S.C. § 253 has the effect of

canceling the claims from the patent and the patent is viewed as

though the disclaimed claims had never existed in the patent.").

Thus, 3V no longer holds any meaningful interest in the now

disclaimed '973 patent.  CIBA does not dispute this point and

agrees with 3V that issues of priority of invention and

invalidity related to the '973 patent are moot.

Nevertheless, CIBA contends, without citation to any

authority, that the Court must still decide whether its '291

application is entitled to the benefit of EP 95810042.2 such

that claims 16-27 of the application are not unpatentable over
3V's now-disclaimed '973 patent. However, CIBA fails to explain
why 3V, or anyone else, should continue to oppose CIBA in its
efforts to demonstrate this, or what 3V's "legally cognizable"
interest is in this issue. Indeed, CIBA identifies no dispute
whatsoever that it continues to have with 3V. In a § 146 or §
291 priority dispute, 3V may have been expected to oppose CIBA
so that it may protect a patent of its own. But, in light of
3V's disclaimer, this rationale has vanished, and any cause of
action stemming from a battle with 3V over priority has been
mooted, removing federal court jurisdiction. See Lusardi, 975
F.2d at 974.

It is possible that in the future, CIBA may assert claims
resulting from the '291 application in a patent infringement
lawsuit. Then, 3V, or some other party, may have an interest in
litigating the priority date of such claims and addressing the
issue of whether the now disclaimed '973 patent constitutes
anticipatory prior art. A genuine dispute such as this,
however, is not presently before the Court, and the Court should
not assume jurisdiction until that time. As the Federal Circuit
explained:

> For there to be a case or controversy under Article
> III, the dispute must be "definite and concrete,
> touching the legal relations of parties having adverse
> legal interests," "real and substantial," and "admi[t]
> of specific relief through a decree of a conclusive
> character, as distinguished from an opinion advising

10

what the law would be upon a hypothetical state of facts."

Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329 (Fed. Cir. 2008) (citing MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (U.S. 2007)); see also Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007) (explaining that a case or controversy exists only when the dispute is real and not hypothetical, affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and has sufficiently adverse parties so as to sharpen the issues for judicial resolution). At this stage, CIBA merely asks the Court to correct what it perceives to be an erroneous decision on the part of the Board, which is not a party to any of the actions before the Court. This, however, would be inappropriate for the Court to do. See Bioxy, Inc. v. Birko Corp., 935 F. Supp. 737, 741 (E.D.N.C. 1996)("It is not the role of federal courts to directly supervise the functions of the patent office by rendering advisory opinions as to the correctness of patent awards.").

The parties did not identify, and the Court did not locate, any case specifically considering the issue of what kind of case or controversy is needed to sustain a § 146 action. However, for § 291 actions, some guidance is available. In Kimberly-Clark Corp. v. Proctor & Gamble Distributing Co., 973 F.2d 911, 914 (Fed. Cir. 1992), the Federal Circuit considered the issue

11

of whether "two patent owners, who once did but [were] no longer accusing each other of patent infringement under section 271, [would] still be entitled to 'relief' under section 291." The Federal Circuit explained that Article III of the Constitution limited the federal judicial power to enumerated cases and controversies, and that it could not even consider the priority issue raised in the § 291 action if the parties' settlement of their infringement action rendered that issue moot. Id. at 913. Thus, a priority dispute is the underlying controversy necessary to establish federal jurisdiction over § 291 actions. Along these lines, this Court has explained that "[i]nterfering patents are certainly a prerequisite [to a § 291 action] as the Federal Circuit has repeatedly held that the sole basis for jurisdiction under § 291 is whether patents interfere." Datex-Ohmeda, Inc. V. Hill-Rom Servs. Inc., 185 F. Supp. 2d 407, 410 (D. Del. 2002). Where, as here, there are no longer interfering patents, there is no longer a priority dispute giving rise to jurisdiction over CIBA's § 291 action (06-00672-JJF). By analogy, the Court concludes that no controversy exists sufficient for it to assume jurisdiction over the comparable § 146 actions (06-00593-JJF and 06-00629-JJF).

Indeed, § 146 provides that "suit may be instituted against the party in interest," and that any "party in interest" may become a party to the action. 35 U.S.C. § 146. Referring to

12

0

00parties "in interest," the language of the statute suggests that parties to a § 146 action must have some articulable reason to participate in the dispute. Notably, courts have considered whether an inventor who has assigned all interest in his or her patent to another party may still be a defendant in a § 146 action against a plaintiff who has previously lost an interference dispute involving that inventor's patent. Those courts have held that such inventors are proper, but not necessary, parties to a § 146 action. See, e.g, E. I. Du Pont de Nemours & Co. v. Celanese Corp., 285 F. Supp. 819, 823 (S.D.N.Y. 1968); Standard Oil Co. v. Montecatini Edison S.p.A., 342 F. Supp. 125, 128 n.2 (D. Del. 1972). However, the rationale for viewing such inventors as proper parties is that after assigning the patent they may still retain some equitable interest in the patent that a § 146 plaintiff is unaware of. See E. I. Du Pont de Nemours, 285 F. Supp. at 823. Here, however, 3V's disclaimer has resulted in dedication of all interest in the patent to the public. W. L. Gore, 424 F. Supp. At 702. Thus, there is no possibility that 3V retained some unknown equitable interest that would justify it remaining in the case as a "proper" party, much less an "indispensable" one.

13

2.  Whether The Court Should Grant Leave To Serve
    Additional Discovery Relating To 3V's Disclaimer
    Of Its Patent Claims

After reviewing the parties' submissions, the Court

concludes that CIBA's motion for leave should be denied.  First,

it appears that what CIBA is seeking to discover will be

overwhelmingly, if not completely, work-product or privileged.

"The work product doctrine protects an attorney's statements,

memoranda, correspondence, briefs, and mental impressions,

obtained or prepared by an attorney in anticipation of

identifiable litigation."  Novartis Pharms. Corp. v. Abbott

Labs., 203 F.R.D. 159, 163 (D. Del. 2001).  In general, the

attorney-client privilege protects attorney-client

communications made for the purpose of obtaining or giving legal

advice.  See Pettingill v. Caldwell, No. 05-224-JJF, 2006 U.S.

Dist. LEXIS 58651, at *1-*2 (D. Del. Aug. 21, 2006).  Here, CIBA

asks 3V to identify the date it first considered filing its

disclaimer, the date it ultimately decided to file its

disclaimer, and the "complete basis" and "all reasons" for

filing the disclaimer.  (D.I. 38, Exh. 2.)  CIBA also seeks all

documents relating to 3V's decision to file its disclaimer.

(Id., Exh. 3).  All of this information reveals details about

3V's legal thought process and is thus protected under the work-

product doctrine, at the very least.  With regard to 3V's

reasons for filing its disclaimer, CIBA contends that a reason

14

such as not "want[ing] to spend money," would not be subject to
a claim of work-product or privilege. But the Court concludes
that even this reason could reveal information regarding the
cost-benefit analysis carried out by 3V and its counsel in
anticipation of litigation, and would likely be protected under
the attorney-client privilege or work product doctrine.

To the extent there is some limited category of information
or documents sought by CIBA that is neither privileged nor work-
product, CIBA has not set forth adequate facts justifying the
burdens of additional discovery to allow pursuit of those
documents. CIBA's primary complaint here is that it
unnecessarily spent money providing electronic discovery to 3V
only to later see 3V attempt to end the case by disclaiming the
'973 patent. However, there is no dispute that settlement
negotiations were ongoing until a few weeks before the
electronic discovery deadline, and there is no indication that
during these negotiations 3V aggressively sought electronic
discovery from CIBA. Further, there is no dispute that 3V
advised CIBA in a March, 6, 2008 telephone conversation that it
was considering filing a disclaimer to end the litigation. In
these circumstances, the Court is unable to conclude that
further discovery is warranted to investigate the possibility
that 3V was intentionally running up CIBA's costs.

## IV. CONCLUSION

For the reasons discussed, the Court will grant 3V's Motion to Dismiss Civil Action Nos. 06-00593-JJF, 06-00629-JJF, and 06-00672-JJF for lack of subject matter jurisdiction. In addition, the Court will deny CIBA's Motion For Leave Of Court To Serve Limited Discovery Relating To 3V's Disclaimer Of Its Patent Claims.

An appropriate Order will be entered.